IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARTLEY MULLEN,             )
                                      )
              Plaintiff,      )
                                        )     Civil Action No. 23-520
            v.                 )
                                      )
DSW INNS, LLC,          )
                                      )
              Defendant.

## MEMORANDUM OPINION

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint and accompanying brief (Docket Nos. 16, 17), Plaintiff's brief in opposition thereto (Docket No. 20), and Defendant's reply brief (Docket No. 21). For the reasons set forth herein, the Court will dismiss Plaintiff's Amended Complaint without prejudice for want of jurisdiction.

### I.    Background

Plaintiff Bartley Mullen ("Mullen") filed his initial Complaint in this matter on March 24, 2023 (Docket No. 1), and thereafter filed an Amended Complaint on June 29, 2023, wherein he avers that Defendant DSW Inns, LLC—d/b/a Drury Inn and Suites, Pittsburgh Airport Settlers Ridge (hereinafter referred to as the "Inn")—violated his rights under the Americans with Disabilities Act (ADA). (Docket No. 14). The ADA provides a "mandate for the elimination of discrimination against individuals with disabilities." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 475 (3d Cir. 2018) (quoting 42 U.S.C § 12101). Mullen's cause of action arises under Title III of the ADA which "prohibits discrimination against the disabled in the full and equal enjoyment of any place of public accommodation." *Id.* (citing 42 U.S.C. § 12182(a)).[1]

---

[1]    In his Amended Complaint, Mullen alleges that he is an individual with a disability and that the Inn provides public accommodations under the ADA. (Docket No. 14, ¶¶ 56–57). The Inn has not challenged his allegations in those respects.

Mullen is a "bilateral, above-knee amputee who is dependent upon a wheelchair for ambulation." (Docket No. 14, ¶ 34).  He resides in Beaver County, Pennsylvania, and alleges that he "desires to patronize accessible hotels in the Pittsburgh Airport, Robinson Township, Route 376 Corridor" for personal reasons and for reasons related to his advocacy for other individuals with disabilities.  (*Id.* ¶¶ 35, 41–43).  To that end, Mullen avers that in March 2023 he "communicated with front desk personnel at the [Inn] and inquired about the height of the top surfaces of the beds in purportedly accessible rooms." (*Id.* ¶ 45).  He alleges he was "told that the top surface of the beds in the accessible rooms was 28 inches above the floor." (*Id.*).  Mullen complains that a 28-inch bed height makes it impossible for him to safely transfer himself from his wheelchair (which is 18 inches from the ground, *i.e.*, within the average wheelchair height of 18–20 inches) to beds in the Inn's purportedly accessible rooms.  (*Id.* ¶¶ 46–47).  Mullen explains that it is difficult for him to independently move from his wheelchair "to horizontal surfaces that are significantly higher than his wheelchair seat" because "he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength." (*Id.* ¶ 49).

Mullen argues that the absence of "accessible beds" at the Inn "is discriminatory and in violation of the ADA." (*Id.* ¶ 51).  He avers that he "would like to stay at the [Inn] in the future with the ability to safely and independently use the hotel's sleeping beds[; h]owever, the lack of accessible sleeping beds in purportedly accessible rooms has deterred [him] from staying at the [Inn]." (*Id.* ¶¶ 52–53).  He thus brings a cause of action for violations of the ADA, 42 U.S.C. § 12181 *et seq.*, and avers that the Inn "engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use in the purportedly accessible rooms at the hotel … are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." (*Id.* ¶ 60).  He further alleges that by "failing to provide

accessible beds or sleeping surfaces, [the Inn] … engaged … in illegal disability discrimination … including … denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at the [Inn];" "affording individuals with mobility disabilities unequal access to goods, services, or facilities;" "utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and … failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities." (*Id.* ¶ 61). Mullen alleges that the Inn's ADA violations caused him harm and he seeks a declaratory judgment that the Inn violated Title III of the ADA, a permanent injunction to bring the Inn's beds/sleeping surfaces into "full compliance" with ADA requirements, nominal damages, costs and attorney's fees, and other relief that is just and proper. (*Id.* at pgs. 13–14).

## II.   <u>Standard of Review</u>

In the Court's consideration of a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). To review a complaint under this standard, the Court proceeds in three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a complaint on account of the Court's "lack of subject-matter jurisdiction." A challenge to standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). The party that invokes federal jurisdiction—in this instance, Mullen—must establish the elements of standing. *Id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The elements of standing of Article III of the Constitution are (1) "an injury in fact that is concrete, particularized, and actual or imminent;" (2) that was caused by the challenged conduct of the defendant; and (3) is likely redressable by the sought judicial relief. *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). Standing ensures that a plaintiff has "alleged such a personal stake in the outcome of [a] controversy as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Rule 12(b)(1) motions are either facial or factual. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). "A facial attack … is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "[A] factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). Courts' consideration of a facial attack is limited to the allegations in a complaint and "documents referenced therein and attached thereto." *Id.* (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). Accordingly, courts apply the same standard for a facial Rule 12(b)(1) challenge as they do to a motion for failure to state a claim pursuant to Rule 12(b)(6). *Id.*; *Ballentine*, 486 F.3d at 810 ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party."). If the challenge to subject matter jurisdiction is factual, then the courts may "weigh and consider evidence outside the pleadings." *Aichele*, 757 F.3d at 358 (internal quotation marks omitted) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

### III.   <u>Legal Analysis</u>[2]

In its brief in support of the motion to dismiss, the Inn argues that Mullen may not proceed to discovery in this matter because he failed to allege that he gave the Inn notice of his disability and the necessity of accommodation, *and* the Inn further argues that Mullen has not alleged facts showing he intended to visit the Inn for purposes of standing. Regarding the latter, the Inn argues that Mullen merely alleges that he "wants to have the option of possibly staying at the hotel in the future." (Docket No. 17, pg. 1). Based on this deficiency of the Amended Complaint, the Inn

---

[2]   Mullen asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. (Docket No. 14, ¶ 26).

raises a facial standing challenge. Mullen responds that it is enough to allege he "would patronize Defendant's hotel *if* it had beds that he could safely transfer to in its 'accessible' rooms and that he is deterred from patronizing the hotel until that time." (Docket No. 20, pg. 2). In this matter where the Inn challenges Mullen's Amended Complaint pursuant to Rule 12(b)(1) *and* Rule 12(b)(6), the Court addresses the jurisdictional question first. *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 2:20-CV-01493-CCW, 2022 WL 973581, at *3 (W.D. Pa. Mar. 31, 2022) ("Because Defendants filed a Rule 12(b)(1) motion with a Rule 12(b)(6) motion, the Court will resolve the Rule 12(b)(1) motion first, determining whether it has jurisdiction before turning to address merits issues."). In this case jurisdiction is where this Court's inquiry ends.[3]

As discussed *supra*, **Section II** (Standard of Review), the minimum requirements of constitutional standing that "a plaintiff must establish [are]: (1) he suffered injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Mahoney v. Waldameer Park, Inc.*, No. CV 20-3960, 2021 WL 1193240, at *2 (E.D. Pa. Mar. 30, 2021) (citing *Lujan*, 504 U.S. at 560). To show an injury-in-fact, a plaintiff's allegations must show "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (explaining that Congress may not create an injury out of whole cloth). The concreteness requirement means that an injury "must actually exist," but not that it must be "tangible." *Spokeo*, 578 U.S. at 340. With respect to future injuries, such injuries "may suffice if the threatened injury is certainly impending, or there is a substantial

---

[3]     Because this matter is resolved on standing, the Court does not reach the Inn's argument that Mullen "fail[ed] to allege that he notified [the Inn] of his disability and need for accommodations" and that this renders his claim "implausible" because plaintiffs "must place defendants on notice to establish a Title III failure to accommodate claim." (Docket No. 17, pgs. 15–17).

risk that the harm will occur." *Mahoney*, 2021 WL 1193240, at *2 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The relief that is available under Title III of the ADA is injunctive relief. *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262 (3d Cir. 2020) ("No damages remedy is available under the ADA."). "In cases where a plaintiff seeks injunctive or declaratory relief only … standing will not lie if adjudication ... rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 561 (3d Cir. 2002) (internal quotation marks omitted) (quoting *Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999)). Accordingly, in Title III ADA cases, a plaintiff has no standing to seek an injunction "unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Id.* (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)); *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-CV-1455, 2015 WL 1925811, at *7 (W.D. Pa. Apr. 24, 2015) ("Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations."); *Mahoney*, 2021 WL 1193240, at *3 ("Courts have found plaintiffs lacked standing to bring claims under Title III of the ADA where they failed to allege a real and immediate threat of future injury with respect to a physical location."). A plaintiff's intent to visit or return to a particular place is self-evidently relevant to the likelihood of future injury. *Brown v. Mt. Fuji Japanese Rest.*, 615 F. App'x 757, 757–58 (3d Cir. 2015).

Courts have often "look[ed] to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of [future] injury is concrete and particularized: '(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to

return; and (4) the plaintiff's frequency of nearby travel.'" *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013) (quoting *Harty v. Burlington Coat Factory of Pa.*, L.L.C., No. 11–01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011)).  A plaintiff need not satisfy all four factors to show a concrete and particularized threat of injury.  *Id.*; *Mortland v. Omni Pittsburgh Corp.*, No. CV 18-1067, 2021 WL 101560, at *2 (W.D. Pa. Jan. 12, 2021) (saying of the four factors: "not all of which must be present in every case, and none of which is dispositive").  Notably, the Third Circuit has not adopted this four-factor test.  *Heinzl*, 2015 WL 1925811, at *8.  A second formulation of this four-factor intent-to-return test is slightly different (just three factors), but nevertheless demands inquiry into whether a plaintiff intends to return to a place of public accommodation, taking into consideration proximity and past patronage.  *Mahoney*, 2021 WL 1193240, at *4.

A second option/alternative to the intent-to-return test is the "deterrent effect test." *Heinzl*, 2015 WL 1925811, at *9.  Pursuant to the deterrent-effect test, "a disabled individual suffers a cognizable injury if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers to his disability there." *Id.*; *Mielo*, 897 F.3d at 480 n.15 ("In this sense, the injury providing Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent—it is *actual*, in that this allegedly unlawful deterrence is something that Plaintiffs are currently suffering.").  The deterrent-effect test is premised on the provision in 42 U.S.C. § 12188(a)(1) that an individual with a disability need not "engage in a futile gesture if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." *Heinzl*, No. 2015 WL 1925811, at *9.  That said, even under the deterrent-effect test, a plaintiff must "show a reasonable likelihood that he or she would use the public place if it were not for the discrimination" and that "he … has an intent to return to the

place of alleged discrimination." *Hollinger v. Reading Health Sys.*, No. CV 15-5249, 2017 WL 429804, at *4 (E.D. Pa. Jan. 31, 2017) (citations omitted). "A plaintiff's intention to return to [a] place [he] visited 'some day'—'without any description of concrete plans'—is insufficient." *Mt. Fuji Japanese Rest.*, 615 F. App'x at 758 (quoting *Lujan*, 504 U.S. at 564).

Having considered the allegations in Mullen's Amended Complaint, it is the Court's determination he has failed to sufficiently plead an injury in fact for standing. Mullen alleges that he "desires to stay in *a* hotel when using the Pittsburgh Airport" and that he "desires to stay in *a* hotel when using the shopping and entertainment facilities," in the vicinity of the Inn. (Docket No. 14, ¶ 42 (emphases added)). He also alleges that—"consistent with his professional advocacy background," having previously worked for the Disability Options Network Center for Independent Living—he desires to test various hotels to ensure they are accessible to individuals with disabilities. (*Id.* ¶¶ 35, 43). He suggests that other hotels in the vicinity of the Inn are often inaccessible in the same way as he has alleged the Inn to be, limiting his options. (*Id.* ¶ 44). Mullen indicates that he contacted the Inn's front desk in March 2023 and asked about the height of the tops of beds in accessible rooms, which garnered the response that bed height in accessible rooms was 28 inches off the floor. (*Id.* ¶ 45). And Mullen further alleges that he "would like to stay at the [Inn] in the future" but that the "lack of accessible sleeping beds in purportedly accessible rooms has deterred" him from doing so. (*Id.* ¶¶ 52–53).

Whether the Court employs the four-factor intent-to-return test or the deterrent-effect test, these allegations do not establish Mullen's standing for Title III of the ADA with respect to the Inn and its owner/manager/operator DSW. With respect to the first factor of the four-factor intent-to-return test (proximity to the place of public accommodation), *Anderson*, 943 F. Supp. 2d at 539, the Court finds that this factor alone cuts in Mullen's favor because the Inn is just thirty minutes

from Beaver County where Mullen resides.[4]   The Court observes a plaintiff's proximity to
overnight accommodations—like a hotel—could also cut against a showing of intent to visit or
return to the Inn insofar as the further an individual is from home, the more necessary overnight
accommodations become.   However, at this juncture the Court draws all inferences in Mullen's
favor and accepts as true his allegation that he has occasion to stay in a hotel in the vicinity of the
Inn when flying through the Pittsburgh Airport and/or shopping and enjoying entertainment in that
area.   (Docket No. 14, ¶ 42).

        The remaining factors are not in Mullen's favor.   For the second factor—past patronage—
Mullen has not alleged ever patronizing the Inn.   For the third factor—the definitiveness of his
plan to return or (in his case) visit the Inn, he has not factually alleged any definite plans to stay at
the Inn.   And for the fourth factor—frequency of nearby travel—Mullen has not indicated how
frequently he flies through the Pittsburgh Airport or is in that area for entertainment and/or
shopping.   In totality, these factors show that Mullen fails to allege an injury in fact pursuant to
the intent-to-return test.   *See Mahoney*, 2021 WL 1193240, at *5 (deciding plaintiff failed to show
an injury in fact pursuant to the intent-to-return test when he "flunk[ed] parts one, two and four"
of the test); *Anderson*, 943 F. Supp. 2d at 539-41 (deciding plaintiff's allegations were not
sufficient for the injury-in-fact requirement of standing with respect to Macy's stores that were
beyond the distance of the second-closest store from plaintiff; she did not allege visiting any of the
stores more than once; she had no definitive plan to visit most of the Macy's stores; and she had
no business or familial ties in the areas of most of the stores); *Mt. Fuji Japanese Rest.*, 615 F.
App'x at 758 (no standing where plaintiff went to a salon just once and "argue[d] generally that

---

[4]        Driving Directions from Beaver County to the Inn, 101 Ridge Road, Pittsburgh, PA 15205, <u>Google
Maps</u>, <u>https://www.google.com</u> (follow "Directions" hyperlink; then search starting point field for "Beaver
County" and search destination field for "101 Ridge Road, Pittsburgh, PA 15205.").

she would like to return once the [ADA noncompliant features] are removed"). *Cf. Harty*, 2011 WL 2415169, at *6 (finding that a Floridian plaintiff adequately alleged standing with respect to a Clifton Heights, Pennsylvania Burlington Coat Factory store when he had visited the Philadelphia area four times in recent years, continued to visit the area to maintain business contacts, intended to visit Philadelphia for a gun show later that year, expressed a desire to return to the defendant's store notwithstanding the store's ADA noncompliance, and was deterred from returning by such noncompliance).[5]

Mullen's allegations likewise fail to demonstrate standing if the Court employs the deterrent-effect test. As discussed above, the deterrent-effect test requires two things: first, that the plaintiff have "actual knowledge of barriers preventing equal access"; and second, that there be "a reasonable likelihood he would use the facility but-for the barriers." *Mahoney*, 2021 WL 1193240, at *6. Therefore, under the deterrent-effect test, the plaintiff must intend to avail himself of the place of public accommodation where discrimination is alleged to occur (just as in the intent-to-return test). *Id.* (explaining that "[e]ven under the deterrent effect test, a plaintiff must … show that he … has an intent to return" (quoting *Hollinger*, 2017 WL 429804, at *4)). Therefore, for much the same reason that Mullen's allegations fail the intent-to-return test, his allegations likewise fail the deterrent-effect test. Mullen's only allegation that he intends to stay at the Inn is vague and conclusory. Mullen alleges that he "would like to stay at the [Inn] in the future" and

---

[5] Pursuant to the other formulation of the intent-to-return test, the Court asks "whether a plaintiff has established (1) the defendant engaged in past discriminatory conduct violating the ADA; (2) support for a reasonable inference the discriminatory conduct will continue; and (3) support for a reasonable inference that 'based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area' he intends to return to the public accommodation in the future." *Mahoney*, 2021 WL 1193240, at *4. Both formulations of the intent-to-return test seek to discern whether a plaintiff intends to return to the place of public accommodation that is alleged to be noncompliant with the ADA. *Id.* The Court's consideration of Mullen's allegations pursuant to this second iteration of the intent-to-return test is ultimately the same as its consideration under the first with respect to outcome.

that "the lack of accessible sleeping beds in purportedly accessible rooms deterred [him] from staying [there]." (Docket No. 14, ¶¶ 52, 53). That allegation is merely a "some day" allegation and does not show a reasonable likelihood Mullen would use the Inn but for the purported barrier of inaccessible bed height. *Mahoney*, 2021 WL 1193240, at \*5 (explaining that "[a] vague, brief, unsupported assertion of intent to visit a public accommodation once access barriers are removed is … akin to a 'some day' plan"); *Mt. Fuji Japanese Rest.*, 615 F. App'x at 758.

Accordingly, pursuant to either the multi-factor intent-to-return or deterrent-effect method of determining whether a plaintiff has standing to sue for injunctive relief under the ADA, Mullen fails to demonstrate such standing and the Court lacks jurisdiction to consider his claim.[6] This Court's power to address any of the Inn's alleged ADA violations is "not a freewheeling power to hold [the Inn] accountable for legal infractions"; rather, the Court's power to address any alleged violation of federal law by defendants like the Inn is limited to instances wherein plaintiffs allege an injury in fact and not just an injury in law. *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.). The Court will thus

---

[6]     To the extent that Mullen has argued that he is a tester, the Court finds that he has not adequately alleged standing to sue in a tester capacity either. An ADA tester is one who "personally visits the public accommodation and tests the barriers to access to determine whether and to what extent they are illegal, takes legal action to enjoin defendants and then returns to the location to ensure compliance with the injunction." *Mahoney*, 2021 WL 1193240, at \*7 (quoting *Reviello v. Philadelphia Fed. Credit Union*, No. CIV.A. 12-508, 2012 WL 2196320, at \*4 (E.D. Pa. June 14, 2012)). Recent decisions from this district found testers to have standing. *Mortland*, 2021 WL 101560, at \*3 ("This court has determined that testers have standing to pursue ADA Title III claims."); *Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-CV-00239, 2020 WL 6731130, at \*6 (W.D. Pa. Aug. 4, 2020) (citing *Heinzl*, 2015 WL 1925811, at \*7) (explaining that a plaintiff, who had standing under the intent-to-return test and the deterrent-effect test, had constitutional standing to bring his claim as a "tester"), report and recommendation adopted, No. 1:19-cv-239-SPB, 2020 WL 5757200 (W.D. Pa. Sept. 28, 2020); *but c.f. Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023) (considering circuit split on the issue of Article III standing of ADA "tester" who challenged disability accessibility information on hotel website but dismissing case as moot and thus not reaching the merits). While it does not matter whether Mullen's purported intent to patronize the Inn arose from his individual desire to do so or merely the desire to be a "tester" for others, it is significant that Mullen only vaguely alleged an intent to visit the Inn and therefore cannot show an injury in fact for injunctive relief that would confer standing.

dismiss Mullen's Amended Complaint. *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."). Further, because a "dismissal for lack of subject matter jurisdiction is not an adjudication on the merits," Mullen's Amended Complaint is dismissed without prejudice. *Associated Builders & Contractors W. Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 291 (3d Cir. 2023) (internal quotation marks omitted) (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999)).[7] And, while the Inn's Motion to Dismiss includes a request for fees and costs incurred in preparing its motion, the Inn has not supported or justified its request; accordingly, the Court will leave it to both parties to bear their own fees and costs. *Tsouli-Moufid v. Credit Control, LLC*, No. CV 19-5400, 2020 WL 6275000, at *2 (E.D. Pa. Oct. 26, 2020) ("In general … each party in a litigation bears its own attorneys' fees and costs, unless a statute or contract provides otherwise." (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010))).

IV.   **Conclusion**

For all the foregoing reasons, the Inn's Motion to Dismiss Mullen's Amended Complaint is **granted**, and Mullen's Amended Complaint is **dismissed without prejudice.** An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:        March  13, 2024

---

[7]      Mullen has once amended his complaint and has not requested leave to amend at this juncture. Thus, it is the Court's determination that there is no reason to afford him opportunity to further amend. *Mullin v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017) (explaining that courts are guided by the factors found in *Foman v. Davis*, 371 U.S. 178 (1962)); *Holcombe v. Ingredients Sols., Inc.*, 797 F. App'x 630, 635 (2d Cir. 2020) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)) (explaining courts cannot be faulted for failing to grant unuttered requests for leave to amend).

Cc/ecf:      All counsel of record